FRANK & ADLER v. ROBINSON & HOLT et als.

*Fraudulent Conveyances—Injunction—Code Practice.*

1. The insertion in a deed of trust of a provision that the trustee shall employ the assignor at a fixed salary to help dispose of the property conveyed, does not render the deed void upon its face, but furnishes evidence of a fraudulent intent, proper to be submitted to the jury.

2. An injunction will be continued to the hearing to retain control of a trust fund, when the rights of the parties are doubtful, and the defendant threatens to remove the fund beyond the jurisdiction of the Court.

3. In such case the Court may allow the defendant to dispose of the property, upon his giving bond to protect the other claimants.

4. While a creditor can issue execution and sell property disposed of in fraud of creditors, this does not prevent a court of equity from restraining the fraudulent donee until the question of fraud can be tried, so that the property can be sold free from any cloud, and under the Code practice, all this may be done in one action.

(*Morris* v. *Willard*, 84 N. C., 203; *Clark* v. *Bonner*, 1 Dev. & Bat. Eq., 608; *Bethel* v. *Wilson*, Ibid., 610; *Bank* v. *Harris*, 84 N. C., 206; *Mebane* v. *Layton*, 86 N. C., 571; cited and approved).

MOTION to continue an injunction to the hearing, made in civil action in the nature of a creditor's bill, pending in the Superior Court of VANCE county, heard by *Connor, Judge,* at Chambers, in Henderson, on March 30, 1886.

The defendants J. I. Robinson and George Holt, as partners of the mercantile firm of Robinson & Holt, becoming largely indebted in carrying on their business, on March 17th, 1886, conveyed by deed " their stock of goods in the store of Mr. Alley, estimated to be of the value of $4,000, more or less, and credits," with a reservation of the constitutional exemption of $500 to each, to the defendant H. T. Watkins, in trust to secure certain preferred and recited debts in the deed mentioned, and contained in schedules A and B, annexed to it.

The trust declared is in these words:

"But on this special trust, nevertheless, to take possession of the same, and after said exemptions shall have been set aside, to take an inventory of said goods, and then to sell the same, with all reasonable dispatch. either privately or publicly, as in the opinion of said trustee may be most advantageous to all parties interested in this trust; also to collect the said debts if possible. The said trustee is to employ the said Robinson and said Holt as salesmen, at the sum of fifty dollars a month, and all other assistance that may be necessary to aid in carrying out this trust; to rent a store room for such time as may be necessary. The trustee is to be paid the proceeds of each day's sales at the close of each day, but he

is to be held personally responsible for only such sum as he shall actually receive."

The deed then directs the funds to be applied to the expenses of administering the trust; a commission of five *per cent.* to the trustee; two small sums, in amount $30.50; then to the debts enumerated in schedules A and B, successively.

The debts set out in schedule A to be first provided for, are in the aggregate $2,734.83, whereof $1,180.17 purports to be due the defendant Isaac Eigenbrun, a resident of Petersburg, in Virginia.

Late at night on March 19th, two days after the execution of the trust deed, the trustee, H. T. Watkins, with his assignees, Robinson and Holt, executed a deed to Eigenbrun for the recited consideration of $2,900, wherein they convey all the goods then in the store to him, except the amount set aside and allowed the debtors for their several personal property exemptions.

The present suit, at the instance of certain unsecured creditors, only one of whose claims was then due, and that by judgment rendered by a justice of the peace, and in behalf of all others, is prosecuted to impeach the deed in trust as fraudulent upon its face and in fact, and to have it declared void, so that the property may be secured and appropriated to the general indebtedness, without regard to priorities.

The complaint, with its accompanying exhibits, was laid before the Judge, after due verification, in support of a rule to be served on defendants, requiring them to appear before him on March 30th, at Henderson, and show cause why the prayer of the plaintiffs for an order restraining the defendants from disposing of any of the property or its proceeds, and the appointment of a receiver to take charge of it, should not be granted.

The order was accordingly made, and pending the proceeding the defendants restrained from removing or in any

manner disposing of the property. The application was heard on the day designated, upon the complaint and answer, then put in by all the defendants, and several other affidavits. The answer is an explicit denial of fraud, and sets out in great detail and particularity the circumstances attending the making of the deed, and the steps taken in its execution, and other facts bearing upon the controversy. The only matters shown in the affidavits, and appropriate to the motion, are:

1. That the sum to be paid the assignors is largely in excess of the amount usually paid in Henderson for the services of experienced clerks and salesmen.

2. That the inventory taken of the goods the next day after the assignment by an agent of the trustee, aided by the assignors, with their original cost, showed them to consist of Winter and Fall goods left over from the past season, of the value of $2,984.58, while their real value did not exceed two thirds of that sum.

3. That defendant Eigenbrun, on the morning of the 20th, placed two agents, Joyner and Davis, in charge of the store, without others, and directed the former to sell the goods according to his judgment to the best advantage, and that for the five days following the sales were only $119.56, none being disposed of below its value.

4. That the trustee, while drawing the deed, said to the assignors that he would want to employ them as salesmen at $50 per month, but they did not insist on this being done, and that in so acting, the trustee regarded that as not an unreasonable compensation for the services of persons so competent to render them.

Upon the hearing, and it appearing that the defendant Eigenbrun, a non-resident, is disposing of the goods with a view to their removal out of the State, it was adjudged: " That the restraining order, as to the over due debt, be continued, and that J. R. Young, Clerk, be and he is hereby

appointed receiver, with power and authority to take into his possession so many of said goods as will in his judgment be sufficient to pay said judgment, ($103.63, with interest from March 19th, 1886, and costs,) and the costs herein, and hold the same subject to the further order of this Court. It is further ordered, that if said defendant Isaac Eigenbrun file with said clerk an undertaking with sufficient security, to be approved by said clerk, in the sum of three hundred dollars, conditioned to pay the plaintiffs Jacob Hecht & Co. such sum as they may recover of him on account of said judgment, if said assignment and bill of sale as set forth in said complaint be adjudged fraudulent and void, that he may proceed to sell and dispose of said goods, and said receiver shall forbear to enter upon the discharge of the duties imposed upon him by this order. That this cause be continued for further orders."

From this judgment, the defendants appealed.

*Mr. T. M. Pittman*, for the plaintiff.
*Mr. E. C. Smith*, for the defendants.

SMITH, C. J., (after stating the facts). The provision in the deed which requires the employment of the assignors, debtors, by the trustee, in disposing of the goods, and the payment for the services of each at the rate of $50 per month, while we are not prepared to say it vitiates and avoids the conveyance, is so unusual and so obviously for their benefit, while in detriment to the trust fund, that it furnishes evidence of a fraudulent intent, proper, with other facts attending the transaction, to be submitted to a jury.

As the removal of the goods by the non-resident claimant, unless the Court interposes, might render the effort to secure them fruitless, even in the event of the plaintiffs' successful prosecution of their action, it presents a case of possible irreparable injury, which warrants the judgment. There is not

an absolute interdict put upon the claimant, but he is only required to surrender so much of the property as will meet the judgment, or he is allowed to retain and dispose of all, upon giving an undertaking, properly secured, to pay the judgment, if upon the final hearing the creditor shall be declared to have the preferable right to have his debt satisfied therefrom.

As the fund is under the control of the Court, and the result left in doubt, it will retain it, to await the determination of the controversy, on such terms as will be least onerous to the defendant, and yet sufficient for the plaintiff. The practice in this regard is well settled, and we refer to but a single case, *Morris* v. *Willard*, 84 N. C., 203. We do not pass upon the question of fraud, but leave it to the verdict of a jury upon an issue framed to present it.

The appellants also except to the exercise of the invoked jurisdiction, because the law gives a direct remedy, and the property, upon the allegations in the complaint, can be seized and sold. While it is true that property liable to final process, and fraudulently alienated by the debtor, is exposed to the creditor's direct access in suing out execution, it is equally true that when he has obtained judgment and issued a fruitless execution, he may ask the Court to adjudge the fraud and pronounce the nullity of the assignment, so that a good title may be sold and full value obtained. *Clark* v. *Bonner*, 1 D. & B. Eq., 608; *Bethel* v. *Wilson*, Ibid., 610; and under the present practice all this may be done in one action. *Bank* v. *Harris*, 84 N. C., 206; *Mebane* v. *Layton*, 86 N. C, 571.

There is no error, and this opinion will be certified to the Court below for its further action, according to *The Code*, §962.

The appellants will pay the costs of the appeal.

No error.                                    Affirmed.