*J. H. BOBBITT v. J. R. RODWELL.

*Evidence—Fraudulent Conveyance—Assignment.*

1. Where it is manifest upon reading the instrument alleged to be
     fraudulent, that though it was apparently executed with fraudu-
     lent intent, still some explanation might be given and a different
     purpose shown by evidence *aliunde,* the case belongs to the class
     that must be submitted to the jury to determine whether the pre-
     sumption of fraud is rebutted; but where the facts set forth in the
     case agreed and apparent from reading the deed of assignment
     are not sufficient to raise a presumption of fraud, if the intent is
     not found as a part of the case agreed, then all of the circum-
     stances should be left to the jury, without instruction as to their
     weight, to determine whether the fraud was proven to their satis-
     faction.

2. Where a deed of trust contains no provision as to the terms of sale, or
     allows the trustee to sell on credit generally, without providing
     for unreasonable delay or specifying the length of credit to be
     given, it is not fraudulent in law, nor is there a presumption of
     fraud for that reason, but such general power to give credit is per-
     fectly consistent with good faith, and falls so far short of raising a
     presumption of fraud, that it cannot be considered as even a badge
     of fraud.

*Head-notes by AVERY, J.

3. The fact that a debtor, in a deed of assignment, reserves to himself the personal property exemption allowed him by the Constitution and laws of the State, does not affect the validity of the deed, and is no evidence of a fraudulent intent. It is not necessary, in this case, to decide whether the reservation in the deed of five hundred dollars of the money arising from the sale of property by the assignee would raise a presumption of fraudulent intent, and make, under the deed, as held by the Court below, fraudulent *per se.*

This was a CIVIL ACTION, heard upon a case agreed, a trial by jury having been waived, at the September Term, 1889, of the Superior Court of WARREN County, before *Boykin, J.*

His Honor held that the deed in trust was fraudulent and void, and gave judgment as follows:

"This cause having been heard upon the facts agreed upon and filed, and upon the deed of trust mentioned and described in the complaint and embraced in the case agreed, a jury having been waived by the parties, it is considered by the Court that the plaintiff take nothing by his said suit, that the defendants go without day, and that they recover against the plaintiff their costs of suit.

CASE AGREED.

This case coming on for hearing by the Court, a jury having been waived by the parties, the following facts are agreed upon:

1. The execution of the deed of trust, as set forth in the complaint, and is made a part of the case agreed.

2. That the trustee is and was insolvent at the time of the execution of the deed of trust.

3. The debtor purchased $650 worth of goods in fall before the assignment.

4. The inventoried value of the goods levied on by the Sheriff was $115, and the same brought at Sheriff's sale at public auction fifty dollars.

5. The goods levied upon by the Sheriff were the remnant of debtor's stock, after his selection of the choicest and most saleable goods as exemptions.

If, upon the foregoing facts, the Court shall be of opinion that the plaintiff is entitled to recover, then judgment shall be rendered accordingly; otherwise, for the defendant.

### EXHIBIT—DEED OF TRUST.

WHEREAS, J. A. Nicholson, of the county and State aforesaid, is justly indebted to J. H. Bobbitt, of the county of Warren and State of North Carolina, by reason of one note of $85, dated August 1, and due, respectively, December 1; and whereas, he is indebted to divers other parties for goods, wares and merchandise; and whereas, he is desirous of securing all of his indebtedness, as far as his means will afford:

Now, therefore, this indenture witnesses, that the said J. A. Nicholson, for and in consideration of the premises, and the further consideration of the sum of one dollar in hand paid, the receipt of which is hereby acknowledged, hath bargained, sold and conveyed, and by these presents do bargain, sell and convey unto J. H. Bobbitt, his heirs, administrators and assigns, the following described property, to-wit: His entire stock of dry goods, notions, tracts, shoes, hardware and merchandise of every description, and store furniture in his store at Macon, N. C.; also, all his bonds, notes, accounts, and other evidences of debt belonging to him, first reserving therefrom the sum of $500, being the personal property exemption exempted and allowed by the Constitution and the laws of North Carolina to him:

To have and to hold to him, his executors, administrators and assigns, upon the following uses and trusts, forever: That the said J. H. Bobbitt shall have full power and authority, and he is fully empowered to take possession of the above described property, and sell the same at public

auction, or by private sale, for cash, or on credit, as he may deem best for the interests of the creditors, and to collect all the debts due to the said J. A. Nicholson, by suit or otherwise, and out of the proceeds he is first to pay over to the said J. A. Nicholson, for his personal property exemption, the sum of $500, as allowed by the Constitution and laws of North Carolina aforesaid; and, secondly, he is to receive a reasonable compensation· for his services and expenses in executing this trust; and, thirdly, he is to pay off the amount due to the said J. H. Bobbitt by reason of the note aforesaid, and then he is to pay the balance of proceeds, *pro rata*, among all of his other creditors, and if there shall be any surplus, he is to pay it to the said J. A. Nicholson.

In witness whereof, said J. A. Nicholson hath hereunto affixed his hand and seal, this the 28th day of November, 1888.                         J. A. NICHOLSON. [Seal]

Test:   B G. RIGGAN.

### COMPLAINT.

The plaintiff above named, complaining of the defendant, alleges—

1. That heretofore, to-wit, on the ____ day of _____, one Augustus Wright was doing, and is still doing, a general mercantile business in the city of Petersburg, Va.

2. That during the year 1888, J. A. Nicholson, above named, was doing a mercantile business in the village of Macon, Warren County, North Carolina, and purchased of the said Augustus Wright certain merchandise, amounting to the sum of about three hundred dollars.

3. That on the 28th day of November, 1888, the said J. A. Nicholson made an assignment, for the benefit of his creditors, to the said J. H. Bobbitt; that the said Bobbitt as said trustee accepted said trust, took possession of the goods, wares, merchandise and property of every description conveyed by said assignment deed.

4. That on the _ _ _ _ day of _ _ _ _ _ _, 1888, Augustus Wright aforesaid, having obtained judgment against the said J. A. Nicholson for the aforesaid sum, to-wit, about three hundred dollars, proceeded to collect the same from said trustee by process of law in the following manner, to-wit: by obtaining executions, putting them into the hands of the Sheriff aforesaid, and filing with him a bond in the sum of fourteen hundred dollars to idemnify him against all loss and damages which might arise from his selling under said executions, a copy of which bond is hereto annexed, and prayed to be made a part of this complaint.

5. That after receiving said executions and said bond, the said Sheriff had the personal property exemptions of said J. A. Nicholson duly allotted out of the goods conveyed to said trustee. After the said personal property exemptions were allotted as aforesaid, there was an excess of said goods, wares and merchandise so conveyed by said trust deed, of the value of one hundred and fifty dollars, which goods the said Sheriff sold at public auction at Macon, N. C, and the proceeds turned over to the said Augustus Wright, which the plaintiff herein is advised and believes, and so avers, is without authority and illegal, and that the said Sheriff and his special bondsman, the said S. P. Arrington, who signed the indemnifying bond heretofore mentioned, are responsible to this plaintiff, in the sum of one hundred and fifty dollars, the value of the said excess of goods so illegally sold at the time of said sale.

Wherefore, the plaintiff demands judgment against the defendants—

1. For the sum of one hundred and fifty dollars, with interest thereon from the time said goods were sold as aforesaid, to-wit, from the _ _ _ _ day of _ _ _ _ _ _, 1888, to _ _ _ _ _ _; and,

2. For the costs of this action.

ANSWER.

The defendants, answering the complaint in the above entitled cause, say:

1. That paragraphs one and two thereof are admitted to be true.

2. That paragraph three is not true, but the defendants admit that a paper-writing, pretending to be an assignment from J. A. Nicholson to the plaintiff, has been executed, but they allege, and submit to the Court, that said pretended assignment is fraudulent and void upon its face, and they are informed and believe that the same was executed with the intent to hinder, delay or defraud the creditors of said J. A Nicholson, and is void.

3 That paragraph four, in so far as it alleges that Augustus Wright obtained judgments upon his debts against said Nicholson, and caused executions to be issued thereon and placed in the hands of the defendant J. R. Rodwell, as Sheriff of Warren County, is admitted to be true; said paragraph is, in all other respects, denied.

4. That paragraph five is not true, but it is admitted that the defendant J. R Rodwell, acting in his official capacity as Sheriff of Warren County, and under the executions mentioned in paragraph three of this answer, did duly lay off and assign to said J. A. Nicholson his personal property exemptions according to law, out of certain goods and merchandise in the town of Macon, N. C., and after setting apart such exemptions did levy upon and sell the interest of said Nicholson in the remainder of the said goods and merchandise (together with other property), realizing therefrom about the sum of fifty dollars at a fair sale, which, defendants allege, was the reasonable value of said goods. And the proceeds of such sale, after paying the expenses of sale, and the legal costs and charges under said executions, paid

the remainder to the said Augustus Wright. And the defendants are advised and believe that all the proceedings of the defendant Rodwell touching the property of said Nicholson were under and by virtue of the said executions issued to him as aforesaid as Sheriff of Warren County, and were in all respects regular and conformable to law, and that he acted in perfect good faith in all said proceedings.

Wherefore, the defendants pray to be hence dismissed without day, with their costs.

*Messrs. W. R. Henry* and *John Devereux, Jr.*, for plaintiff.
*Mr. T. M. Pittman* (by brief), for defendant.

Avery, J.—after stating the facts: The defendant contends that the deed appears, upon its face, to have been made and intended to secure the ease and comfort of the debtor, and that, therefore, there was no error in the ruling of the Court below that the plaintiff, who, as the assignee, claimed under it, could not recover. It is insisted that the provision that the assignee should be empowered to sell the goods on a credit was evidently intended to hinder, delay and defraud creditors, and that the clause reserving "the sum of five hundred dollars as exemption" was clearly inserted for the ease of the debtor. If it is manifest, upon reading the instrument, that though it was apparently executed with a fraudulent intent, still some explanation might be given and a different purpose shown, by evidence *aliunde.* The case belongs to the class that must be submitted to the jury to determine whether the presumption of fraud is rebutted, but where the facts set forth in the case agreed, and apparent from reading the deed of assignment, are not sufficient to raise a presumption of fraud, if the intent is not found as a part of the case agreed, then all the circumstances should be left to the jury, without instruction as to their weight, to determine whether the fraud was proven to their satisfaction. *Brown* v. *Mitchell,* 102 N. C., 364; *Berry* v. *Hall*

decided at this term); *Hardy* v. *Simpson*, 13 Ired., 132; Bump. on F. C., ch. 4; *Hodges* v. *Lassiter*, 96 N. C., 351; *Frank* v. *Robinson*, 96 N. C., 28. This was a voluntary assignment, and therefore it was not necessary to show that the assignee participated in the fraudulent intent. *Savage* v. *Knight*, 92 N. C., 493; *Woodruff* v. *Bowles*, 104 N. C., 197.

The defendant's counsel cites and relies upon Waite on F. C., § 332, to sustain his position. The author adopts, as correct, the rulings of the Courts of New York, which have been followed in at least four or five other States. But the weight of authority, and reason as well, lead to the conclusion that the highest duty of a trustee is to look to and protect the interest of all the creditors whom he represents, and when he is left free to fix the terms of sale, it often proves prejudicial to their interests to refuse to extend credit, when thereby he can realize a better price for the property. *Johnson* v. *McAlister*, 30 Mo., 337; *Dance* v. *Seaman*, 11 Grattan, 778; *Scott* v. *Alford*, 53 Ala., 82; *England* v. *Reynolds*, 38 Ala., 370; *Conkling* v. *Comrad*, 6 Ohio St., 611; *Wright* v. *Thomas*, 1 Fed. Rep., 716; *Farquharson* v. *Eichelberger*, 15 Md., 63; *Gimell* v. *Adams*, 11 Hump. (Tenn.), 283.

If the trustee, clothed with such power, can often exercise it for the benefit of the *cesturs que trust*, the Courts must act upon the hypothesis that, as a rule, a fiduciary agent will act in good faith, and where, on account of his insolvency, or suspicious conduct, there is reason to apprehend that he will prove false to his trust, he may be removed. Bump. (in his work on Fraudulent Conveyances, p. 416), says: "If the instrument is wholly silent as to the manner or terms of sale, the authority of the assignee to exercise a discretion in regard to a sale for cash, or a reasonable credit, is unquestionable upon the ordinary principles which govern the duties of trustees. An express provision, therefore, for that which would be implied by law, if it were absent, will not vitiate the assignment." *Hoffman* v. *Mackall*, 5 Ohio St., 124.

So far from admitting that the clause allowing Bobbitt to sell on a credit raises *per se* a conclusive presumption of fraud, it seems to be consistent with perfect good faith, and falls so far short of giving rise to a presumption of fact against the validity of the deed that it can be considered even a badge of fraud. In some instances, on express provision in a deed of trust for delay in selling the goods conveyed, or for an unreasonable extension of credit, have been held to shift the burden upon an issue involving the question of parol to the party seeking to uphold the deed, while slightly variant limitations upon the power or liability of the trustee have been held to be circumstances to be submitted to the jury to determine their weight, as tending to show the fraud. *Hardy* v. *Skinner*, 9 Ired , 191; *Moring* v. *Little*, 98 N. C., 472; *Eigenbrun* v. *Smith*, 98 N. C., 207; *Frank* v. *Robinson, supra.* In the case of *Eigenbrun* v. *Smith, supra*, this Court held that the fact that a debtor in a deed conveying his property for the benefit of creditors reserves to himself the "personal property exemptions allowed him by the Constitution and laws of the State does not, in any manner, affect the validity of the deed, and is no evidence of a fraudulent intent or a purpose to hinder or delay his creditors." See also Burrill on Assignments, § 202.

After the description of the property conveyed in the deed, the language is as follows: "First reserving therefrom the sum of $500, *being the personal property exemptions exempted and allowed by the Constitution and laws of North Carolina to him.*" It is evident that, while the instrument is not very carefully written, the only fair interpretation that can be given it is, that the assignee, Bobbitt, was to *reserve* the sum of five hundred dollars in goods (he having received no money), and especially as the reservation is made by the terms of the deed synonymous with the amount allowed by law, which is "personal property to the value of five hundred dollars, to be selected by the party." Without a forced con-

struction, we can find no requirement in the conveyance that the trustee shall first convert the property into money and then pay over the proceeds to the debtor, and, therefore, the question whether the attempt to reserve money instead of property would be a provision for the debtor's ease, and would make the deed fraudulent upon its face, is not presented. If, therefore, the ruling of his Honor rested upon the idea that the deed was fraudulent in law, it was erroneous.

The facts constituting the case agreed are, substantially, that the debtor purchased goods worth six hundred and fifty dollars in the earlier part of the Fall before making the assignment; that he executed the conveyance on the 28th day of November to the plaintiff, who was then, and is now, insolvent, and that the Sheriff levied upon and sold the remnant of the goods, inventoried at $115, left after the debtor selected those allowed him as an exemption, and realized from the sale at public auction fifty dollars. His Honor could not upon the facts found, therefore, declare that the deed was made with an intent to defraud creditors, unless he was at liberty to adjudge it fraudulent upon its face. It was the exclusive right of the jury to determine whether it was executed in good faith, and a case agreed could not subserve the purpose of a verdict and enable the Court to proceed to judgment, while the issue upon which the whole controversy hinged remained unanswered. *Phifer* v. *Erwin*, 100 N. C., 59; *Perry* v. *Hardison*, 99 N. C., 21; *Hodges* v. *Lassiter*, 96 N. C., 351. In *Beasley* v. *Bray*, 98 N. C., 266, Chief Justice SMITH, delivering the opinion of the Court, says: "The Court, therefore, committed error in not submitting an issue as to the intent to the jury, which they, not the Court, must draw in ascertaining the presence of fraud. * * * We see no reason why an insolvent debtor may not sell to another, who, if he has not the present means to pay for his purchase, is also free from other debts." The

insolvency of Bobbitt was, at most, only a circumstance to be submitted bearing upon the issue of fraud. If he is honest and competent, that fact does not necessarily disqualify him to act or show bad faith on the part of the maker of the deed in the assignment to him.

There must be a finding either by a jury, or, if a jury trial is waived, or the parties agree to another mode of finding the facts, it must be ascertained and declared as a fact in some manner authorized by law, either that the deed was or was not executed with intent to defraud creditors, before the Court can proceed to judgment.

There was error, for which a new trial must be awarded.
Error.                                              ˙New trial.